Charles E. WOLFE, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 85–4027.

United States Court of Appeals, Ninth Circuit.

Argued June 12, 1986.

Submitted July 9, 1986.

Decided Aug. 29, 1986.

Jack W. Burnett, Billings, Mont., for plaintiff-appellant.

Richard Driscoll, Dept. of Justice, Washington, D.C., for defendant-appellee.

Before CHAMBERS and CHOY, Senior Circuit Judges, and NORRIS, Circuit Judge.

CHOY, Senior Circuit Judge:

Charles E. Wolfe appeals the district court grant of summary judgment, requiring Wolfe, as the alter ego of his corporation (Wolfe & Company), to pay taxes assessed against the corporation. The court additionally held that procedures employed by the Government to levy Wolfe's property were in compliance with federal tax statutes and regulations. We affirm.

## I

## BACKGROUND

Wolfe was the sole shareholder and president of Wolfe & Company ("corporation"), which leased tractor-trailers. Wolfe also operated a proprietorship known as Charles E. Wolfe d/b/a Evergreen Express ("proprietorship"), an "over-the-road" trucking business.

During the tax years 1974–1976, the corporation incurred $114,472.91 in federal tax liabilities for employment, fuel, and highway use taxes, and for penalties, fees, and interest. The Government assessed this amount against the corporation, which the corporation failed to pay after notice and demand. The Government then levied on Wolfe's Interstate Commerce Commission ("ICC") permits used in his trucking business by issuing a levy against Wolfe and serving notices of levy upon the ICC and a prospective buyer of the permits. Wolfe paid the taxes and sued for a refund in district court, alleging that the levy was invalid since he had not been personally assessed with the corporation's tax liabilities.

The parties stipulated to all of the facts and exhibits in the case, among them, the absence of separate bank accounts and Wolfe's payment of corporate employee salaries with proprietorship checks, while charging wages and employee taxes to the corporation. The parties also agreed in the pretrial order that no witnesses were necessary for resolution of the dispute.

The Government subsequently moved to file Wolfe's deposition. Wolfe did not oppose the motion, and the court allowed the deposition to be filed. The district court granted summary judgment against Wolfe, 612 F.Supp. 605, and Wolfe timely appeals.

## II

## APPLICABILITY OF ALTER EGO DOCTRINE

Wolfe challenges the application of the alter ego doctrine to require an individual shareholder to pay the taxes of a disregarded corporated entity. He argues that the Government cannot, on the one hand, consider a corporation viable for the purpose of assessing corporate taxes, and, on the other hand, disregard the same cor-

poration to reach the assets of an individual shareholder.[1]

It is clear that creditors of a corporation may satisfy liabilities from a shareholder's assets under the alter ego doctrine. *See Laborers Clean-Up Contract Administration Trust Fund v. Uriarte Clean-Up Service, Inc.*, 736 F.2d 516, 524 (9th Cir.1984) (explicating the test for determining whether stockholders are personally liable for the debts of their corporations). However, the question remains whether this debtor/creditor alter ego theory applies in the tax context, i.e. allowing the Government/creditor to satisfy the corporation's tax liability from assets of the shareholder. This circuit has not yet considered this issue.

■ In *Avco Delta Corp. Canada Ltd. v. United States*, 540 F.2d 258, 264–65 (7th Cir.1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977), the Seventh Circuit used the alter ego doctrine to require a corporation to pay the taxes of its wholly-owned corporate subsidiary. Wolfe argues that *Avco Delta* did not require an *individual* shareholder to pay the taxes of the disregarded corporation. However, this does not appear to be a material distinction. The essential point to be derived from *Avco Delta* is that a subsidiary corporation can be recognized as a corporation for the purpose of determining the tax, but then disregarded for the purpose of obtaining payment of that amount.

■ Indeed, despite Wolfe's contentions, it is not necessarily inconsistent to view a corporation as viable for the purpose of assessing a corporation tax, while disregarding it for the purpose of satisfying that assessment. Only those corporations that were established with no valid purpose are considered sham corporations, and thus not entitled to separate taxable status. *See Moline Properties v. Commissioner*, 319 U.S. 436, 439, 63 S.Ct. 1132, 1134, 87 L.Ed. 1499 (1943). A corporation could have a valid business purpose (giving

it separate tax status), and at the same time be so dominated by its owner that it could be disregarded under the alter ego doctrine. *Cf. National Carbide Corp. v. Commissioner*, 336 U.S. 422, 431–34 & n. 13, 69 S.Ct. 726, 731–33 & n. 13, 93 L.Ed. 779 (1949) (finding insignificant, for the purpose of determining whether a subsidiary corporation is entitled to separate taxable status, the fact that the owner retains direction of the subsidiary's affairs, provides all of its assets, taxes all its profits, and exercises complete domination and control over its business). This view has been adopted by the Fifth Circuit. *See Harris v. United States*, 764 F.2d 1126, 1128 (5th Cir.1985) ("[w]hether or not [the corporation] was a separate taxable entity is not the same question as whether it was an alter ego for the purpose of piercing the corporate veil"); *see also United States v. Creel*, 711 F.2d 575, 579 (5th Cir.1983), *cert. denied*, 464 U.S. 1044, 104 S.Ct. 714, 79 L.Ed.2d 177 (1984). Indeed, in *Harris*, an individual shareholder's property was held subject to a tax lien to satisfy the disregarded corporation's unpaid employment taxes. 764 F.2d at 1129.

We conclude that the alter ego doctrine can be employed to require Wolfe to pay the taxes of his corporation. There has been no assertion that the corporation had no valid business purpose. The Government stands in a position analogous to any creditor seeking to collects debts owed by the corporation.

### III

### WHETHER WOLFE WAS AN ALTER EGO

■ The question remains whether the district court erred by holding that Wolfe was in fact the alter ego of his corporation.[2] Wolfe raises only two issues regard-

---

1. Whether the alter ego doctrine may be applied to require an individual to pay the tax owed by his corporation is a question of law which we review *de novo*. *United States v. McConney*, 728

F.2d 1195, 1201 (9th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

2. Because the question whether Wolfe was the alter ego of his corporation is essentially factu-

ing the district court's factual conclusion. First, he contends that the district court failed to find wrongful or fraudulent conduct by the taxpayer, which he argues is required under the alter ego doctrine. However, under Montana law,[3] a corporate entity may be pierced without a postive showing of fraud. *See E.C.A. Environmental Management v. Toenyes,* —— Mont. ——, 679 P.2d 213, 219 (1984). Indeed, a corporation will be disregarded where it is used to evade a public duty, such as the paying of taxes. *Commercial Credit Co. v. O'Brien,* 115 Mont. 199, 211, 146 P.2d 637, 643, *cert. denied,* 323 U.S. 665, 65 S.Ct. 75, 89 L.Ed. 541 (1944); *accord Valley Finance, Inc. v. United States,* 629 F.2d 162, 171–72 (D.C.Cir.1980) ("[t]he Government's inability otherwise to satisfy legitimate federal tax debts clearly may form a sound basis for such disregard of corporate form"), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981).

Second, Wolfe argues that the district court improperly relied on statements he made in a deposition.[4] Wolfe contends that no information should have been considered by the district court other than that contained in the stipulation between Wolfe and the Government, and that the deposition was never properly admitted into evidence.

■ We need not determine the merits of Wolfe's contentions. Even if use of the deposition was improper, we would nevertheless affirm the district court judgment in light of the overwhelming evidence supporting the application of the alter ego doctrine apart from statements made in the deposition. *See Purer & Co. v. Aktiebolaget Addo,* 410 F.2d 871, 876 (9th Cir.), *cert. denied,* 396 U.S. 834, 90 S.Ct. 90, 24 L.Ed.2d 84 (1969); *accord Lovett v. Shuster,* 633 F.2d 98, 103 (8th Cir.1980); *see also* Fed.R.Civ.P. 61. As the district court noted, Wolfe was the sole shareholder of the corporation. He was a director and president of the corporation, and made all corporate decisions without consulting other directors. The corporation had no bank account. Banking transactions were conducted through the proprietorship's bank account. The corporation's employee was paid by the proprietorship. Some of the corporation's equipment was purchased on the proprietorship's credit. All of the corporation's purchases were paid for on a proprietorship bank account. When the corporation received payment from third parties, the money was deposited into the proprietorship's bank account. These facts have been stipulated to by Wolfe, and are overwhelmingly sufficient to support the finding by the district court that Wolfe was the alter ego of his corporation.

al, it is generally reviewed under the clearly erroneous standard. *United States v. McConney,* 728 F.2d 1195, 1201 (1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1985). For purposes of their cross-motions for summary judgment in this case, the parties stipulated to "all pertinent facts and exhibits necessary for the resolution of the issues." It is clear that in doing so, the parties intended to submit the case for a bench trial on stipulated facts. *See Starsky v. Williams,* 512 F.2d 109, 111 (9th Cir.1975). Thus, even though the case is before us on appeal from an award of summary judgment, the district court's determination that Wolfe was the alter ego of his corporation is reviewed under the clearly erroneous standard. *See id.*

3. The parties do not dispute the district court's application of Montana's alter ego doctrine. In determining whether there exists an alter ego from whom the Government may satisfy the obligation of a taxpayer, we appear to be bound by state law. *See Aquilino v. United States,* 363

U.S. 509, 512–13, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960); *Terrapin Leasing, Ltd. v. United States,* 55 Amer.Fed.Tax Rpts.2d 85–513, 85–514 (10th Cir.1981); *see also Van Dorn Co. v. Future Chemical and Oil Corp.,* 753 F.2d 565, 570–71 (7th Cir.1985) (criticizing *Avco Delta* for failing to inquire into applicable state law in determining that the assets of the principal corporation could be reached to satisfy tax liability of the subsidiary corporation).

4. The district court states in its memorandum: "Mr. Wolfe admitted in his deposition that '[a]ll the thing [corporation] amounted to was actually a screen.' ... Mr. Wolfe admitted in his deposition that 'I don't really see how a person could go down through this thing and technically separate the two [the corporation and the proprietorship].' When asked if he considered the corporation and the proprietorship to be the same thing, he responded: 'Yes.'" Memorandum Opinion at 4 (May 22, 1985).

## IV

### NOTICE OF LEVY

Wolfe challenges the levy served upon him as illegal because no assessment was made against him as a taxpayer. He argues that levies to collect taxes can be served only upon taxpayers against whom assessments have been made. This argument is without merit.

■ Section 6331 of the Internal Revenue Code empowers the Government to collect overdue taxes by levying upon the taxpayer's property. The regulations to this section provide that a *levy* can be served upon *any person* in possession of property subject to levy, by serving a *notice of levy.* 26 C.F.R. § 301.6331–1(a)(1) (1985). Thus, levies can be effected against any person in possession of the taxpayer's property, not just against the taxpayer.

Wolfe misconstrues section 6331 by arguing that a notice of levy and a levy are distinct, and that a notice of levy, but not a levy, can be served on persons against whom assessments have not been made. Regulation 301.6331–1 makes clear that a notice of levy is simply a means of effecting a levy against persons in possession of taxpayer property.

■ Moreover, under alter ego theory, the assessment against the corporation was effective against Wolfe as well. *See Harris,* 764 F.2d at 1129 (under alter ego theory, assessment issued against corporation was effective as against both shareholder and corporation); *see also Valley Finance,* 629 F.2d at 169 (alter ego of corporation not entitled to separate notice of deficiency).[5]

■ Wolfe also argues that his interest in the ICC licenses was not taxpayer property subject to levy. However, property subject to levy within the meaning of section 6331 and the applicable regulations is construed broadly and reflects congressional intent that the Government be able to reach every interest in property a taxpayer might have. *United States v. National Bank of Commerce,* — U.S. —, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985). The ICC licenses ostensibly owned by Wolfe could therefore be levied upon by the Government as property of the taxpayer corporation, through application of the alter ego theory.

The district court judgment is AFFIRMED.

---

5. Wolfe's reliance on *United States v. Coson,* 286 F.2d 453 (9th Cir.1961), in support of his argument that the Government's failure to file an assessment against him invalidated the levy is misplaced. *Coson* involved partnership tax liability, and since partners and partnerships, unlike corporations and shareholders, are not separate taxable entities, the case is distinguishable on that ground. The *Coson* court invalidated a levy against a partner because no assessment, notice, or demand had been filed against him as a taxpayer. Here, on the other hand, the Government issued the required assessment, notice, and demand against the taxpayer corporation. *Coson* does not mandate that assessments be made against third parties in possession of taxpayer property before levies can be effected.