William Edward TOWE and
Cora Florence Towe, et
al., Appellants,

v.

Craig D. MARTINSON, Trustee,
et al., Respondents.

Bankruptcy Nos. CV 94–162–BLG–
JDS, CV 94–163–BLG–JDS.

United States District Court,
D. Montana,
Billings Division.

Feb. 9, 1996.

Carey E. Matovich, Matovich, Addy & Keller, P.C., Billings, MT, for William Edward Towe, Cora Florence Towe.

James A. Patten, West, Patten, Bekkedahl & Green, P.L.L.C., Billings, MT, for Non–Estate Investors.

Thomas E. Towe, Towe, Ball, Enright & Mackey, Billings, MT, for Heartland Trust, S.O. Tow Trust, Towe Antique Ford Foundation, Towe Farms, Inc., Towe Foundation.

John A. Dostal, Brown, Gerbase, Cebull, Fulton, Harman & Ross, P.C., Billings, MT, for Lewis Rector Trust.

Gregory A. Luinstra, Jardine, Stephenson, Blewett & Weaver, P.C., Neal G. Jensen, Office of the U.S. Trustee, Great Falls, MT, for Craig D. Martinson, Trustee.

Craig D. Martinson, Martinson Law Office, Billings, MT, for Trustee.

Victoria L. Francis, Office of the U.S. Attorney, Billings, MT, Kirk C. Lusty, U.S. Department of Justice, Tax Division, Washington, DC, for United States of America.

Paul VanTricht, Montana Department of Revenue, Helena, MT, for Montana Department of Revenue.

### MEMORANDUM AND ORDER

SHANSTROM, Chief Judge.

Pending before this Court is a bankruptcy appeal. On September 26, 1994, Honorable John L. Peterson, United States Bankruptcy Judge, entered judgment in favor of Craig Martinson, Chapter 7 Trustee of the estate of William Edward Towe (trustee), and against William Edward Towe (Edward Towe), Towe Farms, Inc. (Towe Farms), Towe Foundation, Towe Antique Ford Foundation (TAFF), and The Heartland Trust (Heartland Trust) (Adv. No. 91/00133). On that same day, Judge Peterson also entered judgment in favor of plaintiff trustee against Grant Investments (Adv. No. 91/00166). Appellants now appeal those decisions. The basis for appellant jurisdiction is 28 U.S.C. § 158(a) (1993 & Supp.1995). For the reasons set forth below, the Bankruptcy Court is affirmed.

### BACKGROUND

On November 14, 1990, Edward Towe and Cora Florence Towe filed a Chapter 7 petition with the Bankruptcy Court. The trustee filed the instant action seeking the surrender of assets held by defendants. The United States and the Montana Department of Revenue intervened as plaintiffs. On May 9, 10, and 11, 1994, the Bankruptcy Court, Honorable John L. Peterson presiding, conducted a trial in this adversary proceeding. On September 26, 1994, the Bankruptcy Court issued orders and entered judgments in favor of the trustee ordering the surrender of the defendants'[1] assets to the trustee. The orders specifically set forth some of the assets to be surrendered and also ordered the surrender of any assets discovered after the orders were signed.

Appeals were filed in this Court and briefs were filed by defendant Grant Investment Fund (CV–94–163) and by each of the defendants Towe Farms, Inc., Towe Foundation, Towe Antique Ford Foundation, and Heartland Trust (CV–94–162, CV–94–163).

### STANDARD OF REVIEW

■ The standard of review applicable to the Bankruptcy Court's findings of fact is the clearly erroneous standard. Fed. R.Bankr.P. 8013. The Bankruptcy Court's conclusions of law are subject to *de novo* review. *O'Malley Lumber Co. v. Lockhard,* 884 F.2d 1171, 1174 (9th Cir.1989).

### DISCUSSION
#### A. STANDING

■ Each of the defendants, with the exception of Heartland Trust, raises the issue of standing. They argue that in the Ninth Circuit, a bankruptcy trustee does not have

---

1. The Bankruptcy Court dismissed two defendants, Lewis Rector Trust and S.O. Towe Trust, from the suit.

standing to raise an alter ego issue. In support of that argument, they contend that the Ninth Circuit case of *Williams v. California 1st Bank,* 859 F.2d 664 (9th Cir.1988), provides that a bankruptcy trustee has no standing to bring an alter ego case.

In *Williams,* the Ninth Circuit held that a trustee does not have the power to assert general causes of action on behalf of a bankruptcy estate's creditors. *Williams,* 859 F.2d at 667. The *Williams* case dealt with a trustee who was pursuing claims that were personal to the investor/creditors in the suit, with the proceeds from the claims to be returned to those creditors. The disputed property was not the property of the estate, but, rather, it was the property of the creditors. Because of the limitations on the trustee's power, a trustee cannot take what is clearly a third party claim and attempt to sue on it as trustee. It is that limitation that was so clearly set forth in *Williams.*

The facts in the case at bar are distinguishable from those in *Williams.* The trustee in the case at bar, as required by the Bankruptcy Code, is seeking to recover property for the estate, rather than property for individual creditors. The use of an alter ego action by piercing the corporate veil is permitted under these facts. *See Koch Refining v. Farmers Union Cent. Exch., Inc.,* 831 F.2d 1339, 1349–50 (7th Cir.1987), *cert. denied,* 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988); *Matter of S.I. Acquisition, Inc.,* 817 F.2d 1142, 1153 (5th Cir.1987). To find otherwise would undermine the trustee's efforts to collect the property of the estate.

Defendants argue that cases from other circuits support their position. But those cases, which hold that a bankruptcy trustee does not have standing to raise an alter ego claim, deal with situations much like that in *Williams,* where the trustee was suing on behalf of the creditors for claims personal to them. *See E.F. Hutton & Co., Inc. v. Hadley,* 901 F.2d 979 (11th Cir.1990) (finding trustee, who conceded that he was asserting claims of creditors rather than of the estate, lacked standing); *D.S.Q. Property Co., Ltd v. DeLorean,* 891 F.2d 128 (6th Cir.1989) (holding that trustee cannot settle claims with or sue third parties on behalf of creditors); *In re Ozark Restaurant Equipment Co., Inc.,* 816 F.2d 1222 (8th Cir.1987) (holding that trustee has no standing where he is pursuing claims on behalf of the debtor corporation's creditors). *But see In re B.J. McAdams, Inc.,* 66 F.3d 931 (8th Cir.1995) (distinguishing *Ozark* when trustee seeks invalidation of competing liens on grounds that lienor is debtor's alter ego). The Second, Fifth, and Seventh circuits, however, have already decided that a bankruptcy trustee does have standing to raise an alter ego issue to collect the assets of the estate. *Kalb, Voorhis & Co. v. American Fin. Corp.,* 8 F.3d 130 (2nd Cir.1993); *Matter of S.I. Acquisition, Inc.,* 817 F.2d 1142 (5th Cir.1987); *Koch Refining,* 831 F.2d 1339 (7th Cir.1987).

■ A Chapter 7 trustee has the legal duty to liquidate assets of the estate. 11 U.S.C. § 704 (1993). In performance of the duty to liquidate, the trustee also has a fiduciary duty to all creditors of the estate to protect their interests against dissipation of any assets of the estate. *In re Rigden,* 795 F.2d 727, 730 (9th Cir.1986) (noting that trustee has the duty to maximize distribution to creditors). The bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1993). Those "legal or equitable interests" have been defined broadly to include causes of action. *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). Once the bankruptcy petition has been filed, property rights belonging to a debtor under state law become assets of the estate. *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979). The application of the alter ego doctrine brings the assets of a bankruptcy debtor's alter ego into the bankruptcy estate. *See Suhl v. Bumb,* 348 F.2d 869, 873 (9th Cir.1965), *cert. denied* 382 U.S. 938, 86 S.Ct. 388, 15 L.Ed.2d 349 (1965).

■ Whether or not a trustee can claim the right of alter ego to reach assets of the estate depends on state law. *Wolfe v. United States,* 806 F.2d 1410 (9th Cir.1986). In Montana, the alter ego theory, also known as piercing the corporate veil, is clearly allowed.

*Hando v. PPG Industries, Inc.*, 236 Mont. 493, 771 P.2d 956, 960 (1989). Because it is an equitable remedy, however, no concrete formula exists for determining when a court will disregard the separate identity of the corporate entity. *Id.* The circumstances of the case dictate when the remedy is to be used. *Id.*

In a landmark bankruptcy decision, the Supreme Court expressed the broad scope of a bankruptcy court's equitable powers. *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). In exercising its equitable jurisdiction, "the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." *Id.* at 307–08, 60 S.Ct. at 246. Because the assets of an alter ego are essentially the assets of the bankruptcy estate, it is fair to allow the trustee to pursue those assets.

Any creditor in Montana, including tax collectors, can pursue property held by a debtor's alter ego. The trustee stands in the shoes of a creditor. The trustee is pursuing this action under the rights given to him pursuant to the Bankruptcy code. Allowing the trustee to proceed is consistent with both the equitable nature underlying the piercing remedy and the primary policy objectives of the Bankruptcy Code. The Bankruptcy Court's determination that the trustee has standing to assert an alter ego claims is affirmed.

## B. *GRANT INVESTMENTS*

■ On August 2, 1991, the United States District Court for the District of Montana, Honorable James F. Battin presiding, made a Findings of Fact and Conclusions of Law concluding that Grant Investments is the alter ego of Edward Towe. *Grant Investments Fund v. I.R.S.*, CV–89–126–BLG–JFB (D.Mont.1991), 1991 WL 208442, 10 Mont.Fed.Rpts. 421, 433 (1991). The court found that Grant Investments had no distinct and separate identity from Edward Towe. *Id.* The decision was affirmed by the Ninth Circuit in *Grant Investments Fund v. I.R.S.*, 1 F.3d 1246 (9th Cir.1993). The Bankruptcy Court in the case at bar applied the doctrine of collateral estoppel and found that Grant Investments is the alter ego of Edward Towe.

■ Collateral estoppel is a form of res judicata. Collateral estoppel bars the same parties, or their privies, from relitigating issues which have already been decided in a different cause of action. *Anderson v. State*, 250 Mont. 18, 817 P.2d 699, 701 (1991). The doctrine of collateral estoppel applies to bankruptcy proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991).

■ Three elements must exist to raise collateral estoppel. First, the issue decided in the prior adjudication must be identical to the issue now presented. Second, a final judgment must have been issued on the merits. Finally, the party against whom the plea was asserted must have been a party or in privity with a party to the prior adjudication. *Montana v. United States*, 440 U.S. 147, 155, 99 S.Ct. 970, 974–75, 59 L.Ed.2d 210 (1979); *Anderson*, 817 P.2d at 701.

All of the elements necessary for collateral estoppel are present. In both this case and in *Grant*, the courts were faced with the decision of whether Grant Investment was the alter ego of Edward Towe. Further, the *Grant* decision was issued on the merits and was affirmed by the Ninth Circuit. The parties had a full and fair opportunity to litigate the issue. Finally, the parties, Grant Investment and Edward Towe, were both parties in *Grant*.

The *Grant* decision is binding on Grant Investments in this case under the doctrine of collateral estoppel. Therefore, the Bankruptcy Court's opinion (Adv. No. 91/00166), which applied the doctrine of collateral estoppel and found that Grant Investments is an alter ego of Edward Towe, is affirmed.

## C. *TOWE ANTIQUE FORD FOUNDATION (TAFF)*

On March 5, 1992, the United States District Court for the District of Montana entered a decision against TAFF in an action commenced by TAFF against the United States. *Towe Antique Ford Foundation v.*

*Internal Revenue Service,* 791 F.Supp. 1450 (D.Mont.1992). The Ninth Circuit affirmed the decision in *Towe Antique Ford Foundation v. Internal Revenue Service,* 999 F.2d 1387 (9th Cir.1993), and the United States Supreme Court subsequently denied TAFF's Petition for Writ of Certiorari.

The *TAFF v. I.R.S.* case involved a wrongful levy action. In 1989, the United States levied on ninety-one antique automobiles located in California and Montana in an attempt to satisfy the delinquent federal tax liability of Edward and Florence Towe. The court concluded that the United States was justified in levying on the automobiles, in part because TAFF was the alter ego of Edward Towe. *TAFF,* 791 F.Supp. at 1459.

In the bankruptcy proceeding, the Bankruptcy Court adopted by reference findings of fact 4 through 24 found at *TAFF,* 791 F.Supp. at 1451–57. The Bankruptcy Court concluded that it is bound by the Ninth Circuit holding that TAFF was Towe's alter ego. *TAFF,* 999 F.2d at 1393.

The exact issue in the current case, whether TAFF is the alter ego of Edward Towe, has been decided in the prior adjudication. The judgment in the *TAFF* case was appealed to the Ninth Circuit and affirmed. The *TAFF* case represents a final judgment which was issued on the merits. Finally, TAFF was a party in the prior adjudication and is a party in the case at bar. *See Montana v. United States,* 440 U.S. at 155, 99 S.Ct. at 974–75; *Anderson,* 817 P.2d at 701. TAFF is now collaterally estopped from denying that it is the alter ego of Edward Towe. The Bankruptcy Court correctly determined that the *TAFF* decision is binding on TAFF under the doctrine of collateral estoppel. *See Grogan,* 498 U.S. at 284 n. 11, 111 S.Ct. at 658 n. 11. The Bankruptcy Court's determination that TAFF is the alter ego of Edward Towe is affirmed.

### D. *TOWE FARMS*

The Bankruptcy Court made numerous findings of fact regarding Towe Farms and concluded that Towe Farms was the alter ego of Edward Towe. On appeal, Towe Farms argues that neither piercing nor reverse piercing applies in Montana between a corporation and someone who is not a stockholder. This contention, however, is contrary to language previously set forth by the Ninth Circuit in *TAFF,* 999 F.2d 1387, 1390–91.

This Court agrees with the Ninth Circuit prediction that Montana, when faced with the appropriate case, would follow the other courts that allow for reverse piercing to recover a taxpayer's delinquent tax liability from his alter ego business entity. Reverse piercing would be allowed even though the taxpayer had no ownership interest in the corporation. It is only fair that if a business entity is determined to be a taxpayer's alter ego, the entity's funds should be available to help satisfy the taxpayers debts, regardless of whether the taxpayer is a shareholder. *See Century Hotels v. United States,* 952 F.2d 107, 110 (5th Cir.1992) (noting that if corporate assets are actually the assets of the individual, the assets can be used to satisfy claims against the individual); *Shades Ridge Holding Co., Inc v. United States,* 888 F.2d 725, 729 (11th Cir.1989), *cert. denied,* 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 609 (1990) (holding that ownership of stock in a corporation is not dispositive in determining who exercised control of the corporation).

Towe Farms also argues that all of the material findings of the Bankruptcy Court are seriously flawed and unsupported by the evidence. This Court, however, does not agree with that assertion. Most of the objections to the factual findings appear to hinge on differences in the interpretation of the evidence before the Bankruptcy Court. For example, the Court went into some detail about the expenses incurred during annual meetings, noting that the expenses could be construed as personal vacation expenses. The Court considered the brevity of the meetings and of the minutes compared with the length of time spent at the locations. Towe Farms, however, argued that the expenses were minimal and that the meeting times were sufficient.

Even despite the difference in interpretation of the evidence and despite some mistaken dates or amounts cited by the Bankruptcy

Court, the evidence is simply overwhelming. Even if this Court was to exclude some, even many, of the findings that Towe Farms disagrees with, there is still enough evidence left to find that Towe Farms is Edward Towe's alter ego.

Nearly all Towe Farms' assets originated with Edward Towe (either by him personally or through an alter ego). (Tr. at 321, 326–28.) In forming Towe Farms, the five Towe children each contributed approximately $100, with Tom Towe contributing legal work to incorporate instead of $100. (Tr. at 321, 578.) Even with such a small worth, Towe Farms received hundreds of thousands of dollars in unsecured loans from Grant Investments for operating capital. (Tr. at 326–28.)

Two ranches (the Miles City Ranch and the Belfry ranch) were also quit-claimed to Towe Farms from the Sun Dial Land Company, a company in which Edward Towe owned essentially all of the stock. (Tr. at 132, 423–25.) The transfer was made while Edward Towe was being audited by the I.R.S.. Edward Towe claimed that the consideration the Sun Dial Land Company received from Towe Farms was the relief of paying the unpaid balance on the ranches since there was no equity in the ranches. (Tr. at 425.) Other testimony portrays that Towe Farms paid consideration in excess of three hundred thousand dollars prior to any transfer. (Tr. at 144.) Whether these payments were actually consideration for the ranches is also questionable. Edward Towe claimed that the low or no payment for the ranch was due in part to the fact that he had tried for eighteen years to sell the ranch, but was unsuccessful. (Tr. at 429.) Other testimony casts doubt on the actual efforts to sell. (Tr. at 131–32.) And, although Edward Towe contends that the ranches had no equity at the time of transfer, other evidence suggests that there was significant equity in the ranches. (*See, e.g.,* Tr. at 118, 429–30, 513–515.) On December 31, 1976, Edward Towe assigned over a one million dollar value to each of the two transferred ranches. To complicate matters further, even the date of transfer is questionable. (Tr. at 142–47.) For example, the Miles City ranch apparently has two quit claims, one dated 1976 and one dated 1982. (Tr. at 428.)

Except for one entity, Towe Farms was owned entirely by either Towe family or "Towe entities." The only non-Towe stockholder, Clayton Brokerage, received its shares in Towe Farms in satisfaction of a judgment Clayton Brokerage received in a suit that named Edward Towe as a defendant. (Tr. at 295–96.) The conveyance of stock settled Edward Towe's personal liability to Clayton Brokerage. (Tr. at 298.) Evidence also exists showing that Edward Towe signed checks transferring large sums of money from Towe Farms to himself. (Tr. at 334–36.) And, although Towe Farms claims that those transfers were repayment for loans, the Bankruptcy Court did not find that evidence credible. Edward Towe also traded commodities for Towe Farms, although not formally authorized to do so. (Tr. at 341, 420–21.)

The records reveals much evidence supporting the determination that Towe Farms is the alter ego of Edward Towe. In reviewing the transcripts of the proceeding before the Bankruptcy Court, it is apparent to this Court that the finding that Towe Farms is the alter ego of Edward Towe is strongly supported by the record.

The Bankruptcy Court properly considered the factors set forth in *TAFF* in finding that Towe Farms is the alter ego of Edward Towe. After considering Towe Farms' objections to the findings, the Court concludes that even if some of the arguments were well-taken and some of the findings were disregarded, the judgment would still be affirmed. Overwhelming evidence exists supporting the Bankruptcy Court's conclusion that Towe Farms is the alter ego of Edward Towe.

Determining that an alter ego exists is not the end of our analysis, however. Creditors can generally reach property which ostensibly belongs to a third party if that party is the alter ego of the taxpayer. *TAFF*, 999 F.2d at 1391. To reach the third party by applying piercing in Montana and disregarding a corporate veil, two general elements must be established. First, the corporation must be a mere agent or alter

ego of the target individual. Second, the corporate cloak must have been used as a subterfuge to defeat public convenience, justify wrong, perpetrate fraud, or to defend a crime. *Hando v. PPG Industries, Inc.*, 236 Mont. 493, 771 P.2d 956, 960–61 (1989); *Berlin v. Boedecker*, 268 Mont. 444, 887 P.2d 1180, 1188 (1994); *TAFF*, 999 F.2d at 1391.

Towe Farms asserts that neither of the two prongs have been met in this case, but this Court disagrees. This Court has already affirmed the Bankruptcy Court's ruling that Towe Farms is the alter ego of Edward Towe. To pierce the corporate veil, evidence must also show that the corporate cloak was used as a subterfuge to defeat public convenience, justify wrong, perpetrate fraud, or to defend a crime.

■ In Montana, the evasion of taxes is sufficient grounds for piercing the corporate veil. *TAFF*, 999 F.2d at 1393 (noting that piercing can take place if it is found that Towe used TAFF to evade taxes); *Wolfe v. United States*, 798 F.2d 1241, 1244 (9th Cir. 1986), *amended on other grounds*, 806 F.2d 1410 (9th Cir.1986), *cert. denied*, 482 U.S. 927, 107 S.Ct. 3210, 96 L.Ed.2d 697 (1987) (holding that a corporation will be disregarded where it is used to evade a public duty, such as paying taxes). The Bankruptcy Court found that Towe Farms was used to avoid and evade the collection of taxes by the IRS. Towe argues that it is not wrong to "avoid" taxes. The letter sent to a life insurance company directing it to transfer his policy to Towe Farms is revealing. (Tr. at 333–34.) Contrary to Towe Farms argument, this Court finds that the record as a whole supports the finding that Towe Farms was used to "evade" taxes, as well as avoid them. The finding was not clearly erroneous. Purposely using Towe Farms to evade the collection of taxes, by itself, is enough to satisfy the second prong of the alter ego test. *Wolfe*, 798 F.2d at 1244. The Bankruptcy Court did not err in finding that Towe Farms is the alter ego of Edward Towe and in finding justification for piercing in this case.

■ Towe Farms also contends that any matter claimed to meet the second prong of the alter ego test that took place between 1969 and 1982 is precluded by collateral es-

toppel as a result of tax court decisions on these matter. Towe Farms claims that to establish the second prong of the alter ego test, some wrong, such as an evasion of taxes, must be shown. Any wrong, Towe Farms argues, would have existed in one the audited years and should have been raised in the Tax Court proceedings. The argument lacks merit, however.

First, this Court does not agree with Towe Farms conclusion that the United States and the trustee are essentially one in the same and should be bound by a prior litigation involving the IRS. Second, and more importantly, the issue of whether Towe Farms was an alter ego of Edward Towe was not necessary to the litigation in Tax Court and was not litigated. The Tax Court was to determine Edward Towe's federal income tax liability for the years 1969–1982. That court lacked jurisdiction to hear alter ego issues which arise in a collection action.

Towe Farms also argues that it is grossly inequitable to allow the IRS to take one position (claiming that Edward Towe and Towe Farms are separate entities) to assess the tax, then to reverse that position (claiming they are alter egos) to collect the tax. The Bankruptcy Court, however, correctly noted that the decision in this case is entered in favor of the Chapter 7 Trustee, not the IRS. The trustee is simply collecting the assets of the estate from alter ego corporations as he is required to do.

■ Furthermore, the Ninth Circuit has previously recognized that an entity can be treated as a separate entity for purposes of determining its income tax liability, but treated as an alter ego for collection of that tax. *Wolfe*, 798 F.2d at 1243. This difference in treatment may occur when a corporation has a valid business purpose which allows for a separate tax status, but when that corporation is so dominated by a person that the corporate structure should be disregarded under the alter ego doctrine. *Id.;* see also, *Harris v. United States*, 764 F.2d 1126, 1128 (5th Cir.1985) ("[w]hether or not [the corporation] was a separate taxable entity is not the same question as whether it was an

alter ego for the purpose of piercing the corporate veil").

Finally, Towe Farms contends that it is unfair and improper to bind Towe Farms to the findings and conclusions of the *Grant* and *TAFF* cases since it was not a party and was not allowed to introduce evidence. Those cases held that both Grant Investments and TAFF are alter egos of Edward Towe. The cases applied to Towe Farms because any dealings with either Grant Investments or TAFF were essentially dealings with their alter ego, Edward Towe. Cases affecting more parties than those specifically named in the suit are decided every day. It would make no sense to hold that Grant Investments and TAFF are alter egos of Edward Towe, except to the extent that one of the entities was dealing with Towe Farms. The fact that Towe Farms is affected by the decisions in those cases does not automatically mean that the result is unfair or improper. The cases were not improperly applied to Towe Farms.

This Court could write pages citing to evidence in the record supporting the contention that Towe Farms is the alter ego of Edward Towe. Towe Farms' argument that the findings and conclusions are not supported by the record is meritless. The Bankruptcy Court's determination that Towe Farms is the alter ego of Edward Towe is affirmed.

### E. *TOWE FOUNDATION*

Towe Foundation makes several of the same arguments as Towe Farms. For example, Towe Foundation, like Towe Farms, alleges that any matter claimed to meet the second prong of the alter ego test that occurred between 1969 and 1982 is precluded by collateral estoppel as a result of tax court decisions on these matters. Further, Towe Foundation argues that it is inequitable to allow the IRS to take one position (claiming that Edward Towe and Towe Foundation are separate entities) to assess the tax, then to reverse that position (claiming they are alter egos) to collect the tax. Finally, both Towe Farms and Towe Foundation contend that it is unfair and improper to bind Towe Foundation to the findings and conclusions of the

*Grant* and *TAFF* cases since it was not a party and not allowed to introduce evidence. On these issues, the Court adopts the reasoning set forth in the Towe Farms section of this opinion. That reasoning is also applicable to Towe Foundation.

Towe Foundation makes other arguments that are essentially identical to Towe Farms arguments, but which must be addressed separately to take into consideration the facts specific to Towe Foundation. First, Towe Foundation argues that the findings of fact have no factual basis and are not supported by the testimony or exhibits. Second, Towe Foundation contends that neither of the two prongs of the piercing test have been met.

In addressing the first contention, that the findings of fact are not supported by the testimony or exhibits, this Court notes that much evidence was presented in the trial before the Bankruptcy Court. During that trial, Judge Peterson had an opportunity to examine the demeanor and weigh the credibility of all the witnesses. He was also able to evaluate the exhibits to determine what weight to attach to each. Though Towe Foundation argues that the facts as stated by the Bankruptcy Court are not supported by the evidence, this Court does not agree. The Bankruptcy Court found that portions of the testimony were not credible. This Court will not disagree with that assessment. The Bankruptcy Court set forth the *TAFF* factors and determined the Towe Foundation is Edward Towe's alter ego. The evidence that Judge Peterson found to be credible supports the determination that Towe Foundation and Edward Towe are alter egos. The evidence indicates that Edward Towe was in a position of authority over Towe Foundation. He was able to make decisions and to exercise control over Towe Foundation.

The evidence also suggests that Edward Towe used the foundation for his own benefit. Towe Foundation was purportedly organized to benefit Quaker School. Evidence suggests, though, that small contributions were made to schools that Towe children attended. In recent years, only a small amount, if any, contributions went to the

schools. (Tr. at 471–72.) Instead, TAFF was a recipient of a large amount of Towe Foundation contributions.

Towe Foundation had significant dealings with Grant Investment up until December 31, 1991, when it was forced to withdraw all money from Grant Investment. (Tr. at 282–84, 461–63.) Even the facts surrounding the withdrawal of its money are suspicious. (Tr. at 285–90.) Like Towe Farms, many transactions exist between Towe Foundation and the other Towe entities, making the facts complex. In the aggregate, the facts fit within the *TAFF* factors for an alter ego and support the Bankruptcy Court's determination that Towe Foundation is the alter ego of Edward Towe.

Towe Foundation also contends that the two prongs of the piercing test have not been met. Since the Court has already addressed the first prong—the determination that Towe Foundation is the alter ego of Edward Towe—the Court now considers the second prong. The Bankruptcy Court found that Towe Foundation was used to evade the collection of taxes. The evidence considered credible by the Bankruptcy Court supports that finding. Towe Foundation was founded as a charitable organization, but after reviewing evidence, it becomes apparent that the foundation was used, in part, as a shield from tax liability. Similar to the analysis in Towe Farms, purposely using Towe Foundation to evade the collection of taxes, by itself, is enough to satisfy the second prong of the alter ego test. *Wolfe,* 798 F.2d at 1244.

The Bankruptcy Court's opinion with respect to Towe Foundation is affirmed.

### F. *HEARTLAND TRUST*

■ Heartland Trust was purportedly created in 1971 as settlement of a dispute between Edward Towe and John Jacobson. A certain number of shares of stock in a holding company for the Bank of Butte were transferred to Heartland Trust. No further property has been added to the initial fund since the contribution in 1971. The legal basis of the trust is allegedly based on a letter dated January 21, 1971, signed by Edward Towe and John Jacobson, which states:

This is to confirm our oral agreement today by which I have agreed to assign 139 ⅙ shares of my stock in the Butte Insurance Agency Inc. to the newly created Trust known as the HEARTLAND TRUST which trust is to be for the benefit of our three children with you and your wife having access to the annual income therefrom and the undersigned is to act as trustee.

A formal trust instrument was signed after Edward Towe filed for bankruptcy. On the date of the bankruptcy petition, the debtor was listed as the trustee of Heartland Trust.

■ State law controls the question of whether a valid trust exists. *In re Teichman,* 774 F.2d 1395, 1398–99 (9th Cir.1985). In 1988, the Montana legislature rewrote Montana's law on trusts. The current "Trust Code" is found at Title 72, Chapters 33 through 36, Mont.Code Ann.. The law was modeled after the California law on trusts. The new law became effective on October 1, 1989, and was the law on the date the bankruptcy was filed. Section 72–33–102 of the new law provides that it applies to existing trusts and proceedings concerning existing trusts unless application "would substantially interfere with the rights of the parties and other interested persons."

The new law also provides that an express trust is not valid unless evidenced by one of the following methods: 1) by a written instrument signed by the trustee, or by the trustee's agent if authorized in writing to do so; 2) by a written instrument signed by the trustor, or by the trustor's agent if authorized in writing to do so; or 3) by operation of law. Mont.Code Ann. § 72–33–208 (1995).

Heartland Trust contends that a valid trust was created in 1971 and continues to this date. It argues that all of the elements of a voluntary or express trust are present in the instant case and, therefore, the trust is a legally created trust. This Court does not agree that the 1971 letter created a legal trust.

■ The Bankruptcy Court correctly noted that the California elements of an express trust include a competent trustor, the trustor's intention to create a trust, a trustee, an estate conveyed to the trustee, an acceptance

of the trust by the trustee, a beneficiary, and a legal purpose and legal term. *In re Teichman*, 774 F.2d at 1399. Because Montana patterned its trusts laws after California law, these elements provide guidance in determining if a Montana trust is valid. *Edgar v. Hunt*, 218 Mont. 30, 706 P.2d 120, 122 (1985) (In adopting a statute from a sister state, Montana adopts the construction placed upon in from the sister state's highest court.) The *In re Teichman* elements are consistent with the Montana Trust Code and with prior Montana case law.

If the language of the parties fails to indicate the existence of an express trust, the Court may then turn to the facts and circumstances surrounding the transaction and the relationship of the parties. *See In re Penn Central Transp. Co.*, 486 F.2d 519, 524 (3rd Cir.1973) (en banc), *cert. denied*, 415 U.S. 990, 94 S.Ct. 1588, 39 L.Ed.2d 886 (1974). The commingling of funds is one factor that the Bankruptcy Court considered. Although Heartland Trust argues that Edward Towe never commingled the assets of the Heartland Trust with his own assets, the evidence supports the Bankruptcy Court finding that the debtor did commingle the *res* of the trust with his own funds.

Perhaps most damaging is the Bankruptcy Court's decision to treat testimony regarding Heartland Trust as incredible. This Court does not disagree with the Bankruptcy Court decision. Edward Towe first testified in the *Grant* trial that he could have withdrawn all the funds from the trust, but in this trial he stated that he could not. (Tr. 386–88.) The Bankruptcy Court concluded that Heartland Trust was, at best, an oral agreement to create a trust. This Court agrees.

A close look at the letter of January 1971 demonstrates an agreement to create a trust in the future. The Bankruptcy Court found that the property held by Grant in the Heartland Trust is property of the debtor's estate since the debtor never legally created a valid express trust and since he commingled the *res* of the trust with the debtor's own account, resulting in a debtor-creditor relationship between the debtor and Jacobson. Contrary to the arguments of Heartland Trust, the trust is not a valid voluntary or express trust under current Montana trust law. The Bankruptcy Court's order regarding Heartland Trust is affirmed.

In conclusion, the evidence shows that Edward Towe has commingled his personal affairs and the affairs of his immediate family with the Towe entities continuously throughout their existence and that he has controlled the Towe entities. This case involves a great deal of transactions and dealings between the defendants. As pointed out by the defendants, many of their activities were not illegal and some activities, by themselves under difference circumstances, may not even have been questioned. But taken in the aggregate, the evidence clearly supports the Bankruptcy Court's decision.

Accordingly,

**IT IS ORDERED** that the Bankruptcy Court is affirmed.

The Clerk of Court is directed to forthwith notify the parties of the making of this order.