[No. B215819. Second Dist., Div. Eight. Sept. 24, 2010.]

ROBERT WEINBERGER, Plaintiff and Appellant, v.
JAMES G. MORRIS et al., Defendants and Respondents.

**COUNSEL**

Law Offices of Daniel J. Sweeney and Daniel J. Sweeney for Plaintiff and Appellant.

James G. Morris, in pro. per.; Morris & Associates, Brandon C. Murphy and Bayleigh J. Pettigrew for Defendant and Respondent James G. Morris.

Law Offices of David L. Ingram and David L. Ingram for Defendant and Respondent Lee A. Davis.

Chris D. Greinke for Defendant and Respondent Pacific Reverse Mortgage, Inc.

## OPINION

**BIGELOW, P. J.**—This appeal is taken from a final order determining the construction of a trust instrument. (Prob. Code, §§ 1304, 17200.) We affirm the order.

## FACTS

*The Trust Background*

Sue Weinberger (Mrs. Weinberger) was born in 1911. During her lifetime, Mrs. Weinberger had two children, Sheila Weinberger and Robert Weinberger, and acquired a parcel of real property located on Atoll Avenue in North Hollywood. At all times relevant to the current case, Lee Davis was Sheila's fiancé.[1]

On October 12, 1996, Mrs. Weinberger executed a declaration of trust creating the "Sue Weinberger Trust" (the Trust). On the same date, Mrs. Weinberger executed a quitclaim deed transferring her Atoll Avenue property to the Trust. The quitclaim deed to the Trust was recorded on October 31, 1996.

*The Trust Instrument's Language*

Article 1.1 of the Trust instrument provided that Mrs. Weinberger was the initial trustee, and Sheila was the successor trustee, followed by Davis and then David Sarazen.

Article 2.1 of the Trust instrument gave the trustee the power to dispose of all assets in the trust without court approval. It granted the trustee "full power, authority, and discretion . . . [¶] . . . [¶] . . . [t]o hold, maintain, sell, exchange, replace, or acquire any residence of the Settlor or interest therein which the Trustee shall receive as an asset into this Trust, and pay all expenses thereon."

---

[1] Further use of parties' first names is for purposes of clarity and should not be taken to reflect any disrespect.

The Trust also provided that after Mrs. Weinberger's death, the trustee was to pay all its expenses, and that all trust assets, save the personal effects which Mrs. Weinberger requested distributed in separate written instructions, were to go to Sheila. Article 5.1 further indicated that her son Robert had been intentionally omitted from the trust.

Article 5.2 of the Trust instrument provided that, if Sheila died prior to receiving final distribution, the undistributed principal and income were to go to Davis. Article 5.2 further provided that, if all of the named beneficiaries died prior to final distribution of the Trust estate, its remainder was to go to the heirs of the trustees.

The Trust instrument stated that, until final distribution, the trustees were entitled to take from its coffers for "the health, support, maintenance, and education of [a] beneficiary."

*The Posttrust Events*

Mrs. Weinberger died in May 1997. On December 22, 1997, Sheila recorded an "Affidavit Death of Trustee/Trustor." After recording the affidavit of Mrs. Weinberger's death as trustee/trustor of the Trust, Sheila never executed, delivered or recorded—in her role as successor trustee of the Trust—any documents to transfer the Atoll Avenue property out of the Trust and to herself as the beneficiary of 100 percent of the Trust estate.

Sheila died in September 2002. In April 2005, Davis filed a petition for probate of a will allegedly executed by Sheila shortly before her death. (*In re Estate of Weinberger* (Super. Ct. L.A. County, No. BP091634) (*Estate of Weinberger*).) Attorney James G. Morris represented Davis in the *Estate of Weinberger* matter. In September 2005, in the *Estate of Weinberger* matter, Robert filed a contest of will.

In November 2005, Davis recorded an "Affidavit—Death of Trustee" disclosing that Sheila, a (successor) trustee of the Trust, had died. At the same time, Davis, as "Successor Trustee of the . . . Trust," executed a quitclaim deed transferring the Atoll Avenue property out of the Trust, and to himself. Davis recorded the quitclaim deed in December 2005.

In February 2006, parallel lines of events transpired. First, Davis obtained funds through a "reverse mortgage" loan from Pacific Reverse Mortgage, Inc. (PRM),[2] secured by a deed of trust against the Atoll Avenue property. On

---

[2] PRM does business as Financial Heritage and as Financial Freedom Senior Funding Corporation.

February 15, 2006, the deed of trust was recorded. In late February 2006, in the *Estate of Weinberger* matter, the probate court denied Robert's contest of Sheila's will and denied Davis's petition to probate Sheila's will.[3]

In June 2006, Robert filed the current action against Davis, Attorney James G. Morris (see fn. 4, *post*), and PRM. According to Robert's complaint, Davis and Morris had falsely represented to Robert that Davis would use the *Estate of Weinberger* matter to resolve whether the Atoll Avenue property had "passed to Davis"; that the false representations had been made for the purpose of inducing Robert to delay efforts to enforce his interest in the property; and that Davis then used the period of delay to extract the equity from the property by way of the reverse mortgage from PRM. Robert alleged that he rightfully owned the Atoll Avenue property because the Trust made Davis "only a 'contingent beneficiary,'" subject to the condition that the property would only pass to Davis in the event Sheila predeceased Mrs. Weinberger, "a condition which did not occur." (Boldface & underscoring omitted.) Robert alleged that the property had passed to Sheila on Mrs. Weinberger's death, meaning that, when Sheila died, the property had passed to Robert as Sheila's heir. Robert's complaint alleged a variety of causes of action, all related to the dispute over his right to the Atoll Avenue property.[4]

In February 2009, the parties tried Robert's claims regarding the construction of the Trust instrument to the trial court on stipulated facts and documentary evidence. On February 17, 2009, the trial court entered a minute order recording its decision that "Lee Davis is the beneficiary of the [T]rust." On August 4, 2009, the court signed and entered a formal, final order in favor of Davis. Meanwhile (in Apr. 2009) Robert filed a notice of appeal.

## DISCUSSION

Robert contends the trial court's final order must be reversed because Davis never acquired any right, title or interest in the assets held by the Trust. More specifically, Robert argues that the assets owned by the Trust "irrevocably vested" in Sheila on the death of Sue Weinberger. Robert contends that he

---

[3] The record before us on appeal contains materials suggesting that Davis's lawyer in the probate proceeding, James G. Morris, advised the probate court on February 17, 2006, that Davis intended to withdraw his petition to probate Sheila's will because Davis had then recently discovered there were no assets subject to probate.

[4] More specifically, the complaint alleged (1) fraud against Davis and Morris; (2) imposition of a constructive trust against Davis; (3) slander of title against Davis and Morris for recording a deed conveying the property from the Trust to Davis; (4) cancellation of the deed conveying the property from the Trust to Davis; (5) quiet title against Davis and PRM; (6) negligence against PRM for failing to "adequately determine Davis' legal rights" in the property; (7) violation of the unfair competition law against Morris; (8) unjust enrichment against Davis; and (9) declaratory relief against Davis, Morris and PRM.

is entitled—as Sheila's sole heir—to the assets which were once held by the Trust. According to Robert, the "actions of . . . Davis as purported 'successor' trustee of the Sue Weinberger Trust were not actions of a trustee at all since the . . . Trust did not exist after the death of Sue Weinberger and certainly not after Sheila Weinberger's recording of her Affidavit Death of Trustor/Trustee on December 22, 1997." We disagree.

■ Robert's argument implicates the "merger doctrine," which may be summarized as follows: when the sole trustee of a trust and the sole beneficiary of the trust become one and the same person, the duties of the person, in his or her role as trustee, and the interests of the person, in his or her role as beneficiary, "merge," meaning that the trust terminates as a matter of law, and the trust's assets irrevocably vest in the beneficiary. (See *Ammco Ornamental Iron, Inc. v. Wing* (1994) 26 Cal.App.4th 409, 417 [31 Cal.Rptr.2d 564].) The determination whether the duties of a trustee and the interests of a beneficiary have become united in a single person is a question of law resolved by construction of the trust instrument. (*Id.* at pp. 417–418.)

In the current case, the trial court rejected Robert's claims for the following stated reasons: "[T]he Sue Weinberger Trust did not terminate upon Sue Weinberger's death. The merger doctrine does not apply . . . . In interpreting Sue Weinberger's intent, as expressed in the Sue Weinberger Trust, the Sue Weinberger Trust continued until there was a final distribution of the assets of the Sue Weinberger Trust. Sheila Weinberger filed an Affidavit—Death of Trustee upon Sue Weinberger's death, but did not transfer the real property located [on] Atoll Avenue . . . out of the Sue Weinberger Trust. Upon Sheila Weinberger's death the real property continued to remain in the Sue Weinberger Trust and was distributed by Lee Davis acting as trustee of the Sue Weinberger Trust to himself. Upon Lee Davis' distribution of the real property, the Sue Weinberger Trust terminated. [¶] The court finds and orders that Lee Davis was the beneficiary of the Sue Weinberger Trust following Sheila Weinberger's death and he is entitled to receive all of the assets from the Trust. Lee Davis is the rightful beneficiary of the Sue Weinberger Trust." (Capitalization omitted.)

■ Robert's arguments for application of the merger doctrine fail to persuade us that the trial court's interpretation of the Trust instrument is legally incorrect. The language in the Trust instrument belies Robert's argument that Mrs. Weinberger intended her trust arrangement would cease serving any purpose upon Mrs. Weinberger's death. (*Estate of Taylor* (1967) 66 Cal.2d 855, 858 [59 Cal.Rptr. 437, 428 P.2d 301] (*Taylor*) ["In the absence of any indication to the contrary a testator contemplates prompt distribution."].) The language employed by Mrs. Weinberger in her trust instrument provided that, upon her death, the trustee would pay certain expenses and

distribute her personal effects in accord with her written directions, and distribute the remainder to Sheila. If Mrs. Weinberger's trust instrument ended there, then Robert's argument might prevail (*ibid.*), but it did not. Mrs. Weinberger's trust instrument further provided in article 5.2.A: "If Sheila . . . should die prior to receiving final distribution, the undistributed principal and income of such beneficiary's share shall be held, administered and distributed for the benefit of Lee Davis . . . ." And article 5.4 provided: "Until a beneficiary receives his or her final distribution, the Trustee may pay to or apply for the benefit of such beneficiary, all or part of the net income plus principal from such beneficiary's share, for the health, support, maintenance, and education of such beneficiary." We see no language in Mrs. Weinberger's trust instrument indicating that it imposed upon a trustee an affirmative duty to make a prompt distribution of the Trust's assets to Sheila upon Mrs. Weinberger's · death. At the same time, the Trust included express language governing the contingency of Sheila's death prior to a distribution of trust assets to her.

The language found in Mrs. Weinberger's trust instrument is not the same as the language found in the instruments at issue in *Taylor, supra*, 66 Cal.2d 855, and *Estate of Newman* (1964) 230 Cal.App.2d 158 [40 Cal.Rptr. 785], the primary cases cited by Robert in his argument. *Taylor* involved a will, meaning any interpretation of the instrument had to be rendered in light of the public policy favoring the "prompt" distribution of an estate. (*Taylor, supra*, at p. 858.) Depending upon its terms, a trust may serve significantly different purposes than a will. More importantly, *Taylor* involved an instrument which included no language regarding the time limits for distribution of estate assets. In that context, and given evidence showing an executor's undue delay in distributing the estate, the court found that the instrument had prescribed a reasonable time limit for distributions. The language found in Mrs. Weinberger's trust instrument gives no such indication that she intended a prompt distribution of her trust's assets.

██ In *Estate of Newman, supra*, 230 Cal.App.2d 158, the relevant language of the trust instrument named the trustor's widow as a "life tenant" and provided: " '*Upon the death* of [wife], the principal then left of Trust A, with all accumulations thereon, *shall be distributed* as follows . . . .' " (*Id.* at p. 160, italics added.) The language included in Mrs. Weinberger's trust, in contrast, reads: "*After the death* of the Settlor, the trust estate *shall be held, administered and distributed* by the Trustee as follows . . . ." (Italics added.) Mrs. Weinberger's trust also vests discretion in the trustee and expressly provides for a contingent beneficiary. While we understand the law generally implies a requirement for the prompt distribution of an estate under the language in *Estate of Newman*, we cannot imply such a requirement under the language in the Trust before us today. Mrs. Weinberger's trust contemplated ongoing management until a final distribution, at the trustee's discretion, to a

then living beneficiary. This reading is also consistent with the fundamental purpose of the Trust, which expressly provides that Mrs. Weinberger had "intentionally omitted to provide for her son . . . Robert . . . ."

## DISPOSITION

The trial court's order dated August 4, 2009, is affirmed. Respondents are awarded costs on appeal.

Rubin, J., and Grimes, J., concurred.