Filed 4/14/14  Schwerin v. Kuhns CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MICAH SCHWERIN,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>WILLIAM A. KUHNS, Trustee, etc. et al.,<br><br>        Defendants and Respondents. | A138444<br><br>(Marin County<br>Super. Ct. No. CIV 1200218) |

Micah Schwerin seeks to collect personal injury damages from trust assets held for the benefit of a woman who struck him with her automobile.  The trial court ruled Schwerin could not reach the trust assets.  The court granted the trustee's motion for summary judgment and entered judgment against Schwerin.

We conclude there are triable issues of fact and therefore reverse the judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND[1]

A. *The Accident and Personal Injury Judgment*

In November 2010, Schwerin was struck by a car driven by Claire Bradenberg.  Schwerin was walking in a crosswalk at the time of the accident and he suffered serious injuries.  Bradenberg had no auto insurance.  Schwerin sued Bradenberg and obtained a judgment against her in the amount of $865,573.90.

---

[1] Respondents did not dispute many of the facts set forth in Schwerin's separate statement of facts in opposition to the motion for summary judgment.  Instead, they labeled them "irrelevant."  We consider any facts respondents labeled as irrelevant undisputed for purposes of this appeal.

1

Bradenberg died from causes unrelated to the accident after Schwerin obtained his judgment against her. A petition for letters of administration, filed in superior court on behalf of Bradenberg's estate, stated that she died with property with an estimated value of $1.5 million. Later, however, an attorney for the estate told the court there had been a mistake, that Bradenberg personally had no assets, and that any assets used or controlled by Bradenberg belonged to a trust.

*B. The Trust*

The trust in question was the Hiroko Friedman Revocable Trust (dated October 22, 1999, as amended in 2005; hereafter, the Trust). Hiroko Friedman was Bradenberg's mother. Friedman was the settlor and the original trustee of the Trust. She funded the Trust with two pieces of improved real property located in Mill Valley, California, all of her financial accounts, and all of her tangible personal property. Friedman, as trustee, generally retained control over the principal and income of the Trust to use as she saw fit during her lifetime.

Friedman died in January 2008. The Trust named Bradenberg as the successor trustee. The Trust provided for mandatory payments of income to Bradenberg following Friedman's death. The trustee (Bradenberg) had the power to make discretionary payments of principal to Bradenberg for her "health, education, support, and maintenance." A "special trustee" could make additional discretionary payments of principal for Bradenberg's "comfort, welfare, and happiness." The Trust named respondent William A. Kuhns as special trustee. Finally, the Trust contained a "Spendthrift Clause," which provided the interests of the beneficiaries of the Trust were not transferable and were to be free from the claims of creditors.

Bradenberg acted as trustee until her death in 2011. The Trust provided that upon the death of Bradenberg, the Trust was to terminate, with the trustee distributing the Trust property to Bradenberg's "then-living issue." In the event Bradenberg died with no living issue, as actually happened, the trustee was to distribute the Trust property in equal shares to Ichiro Inoue and Kuniko Hyoto, Friedman's nephew and niece, respectively. Kuhns succeeded Bradenberg as trustee after her death.

*C. Schwerin's Attempt to Collect from the Trust Assets*

In January 2012, Schwerin filed a petition to enforce his money judgment against the assets of the Trust. (See Code Civ. Proc., § 709.010.) The petition named Kuhns, in his capacity of trustee, as the respondent to the petition. After discovering Kuhns had paid over $1 million in Trust assets to Hyoto and Inoue, Schwerin amended his petition to name them as additional respondents.

Schwerin alleged several theories of recovery that turned on Bradenberg's role as both trustee and beneficiary of the Trust. He alleged that Bradenberg was the de facto owner of the Trust assets and that she had defrauded her creditors. Alternatively, he alleged that Bradenberg's dual roles caused the Trust to terminate under the doctrine of merger; or that Bradenberg controlled the assets of the Trust in such a way as to create a unity of interest between her and the Trust, allowing the court to "lift the veil of the Trust."

Kuhns moved for summary judgment. He argued the Trust assets were not subject to the claims of Schwerin or any other creditor of Bradenberg given the spendthrift clause. Kuhns further contended there were no material issues of fact with respect to Schwerin's fraud, merger, or alter ego theories.

Schwerin countered with evidence showing Bradenberg treated the Trust assets as her own. A tenant living in one of the Trust's Mill Valley properties declared that she leased the property pursuant to a written lease between herself and Bradenberg. The tenant paid her deposits and monthly rent by check made payable to Bradenberg. Kuhns testified at his deposition that, as successor trustee to Bradenberg, he could recall no records of receipts and disbursements from the Trust maintained by Bradenberg. Similarly, he was unable to confirm that Bradenberg maintained a separate bank account for the Trust. He was able to verify that she never filed tax returns for the Trust. Finally, despite his role as special trustee during Bradenberg's life, Kuhns had never met her or spoken to her on the telephone.

The trial court granted the motion for summary judgment, finding Kuhns had established the Trust was a spendthrift trust and that the Trust owed no money to

3

Bradenberg that could be used to satisfy Schwerin's judgment against her.  The court entered judgment in favor of Kuhns.  The court also entered judgment in favor of Hyoto and Inoue on the ground that the ruling in favor of Kuhns resolved any claims by Schwerin against them.

## II. DISCUSSION

### A. *The Standard of Review*

We review the trial court's decision on the motion for summary judgment de novo. (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 717.)

"The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  (Code Civ. Proc., § 437c, subd. (c).)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted.)  We liberally construe the evidence presented by the opposing party, resolving any doubts concerning the evidence in that party's favor. (*Wilson v. 21st Century Ins. Co., supra,* 42 Cal.4th at p. 717.)

### B. *The Merger Doctrine*

Schwerin's first contention remains, as he argued below, that the Trust terminated as a matter of law when legal title to the Trust property was held by a trustee, Bradenberg, who was also the beneficiary of the Trust.  This merger of legal and beneficial interests violates the very nature of a trust according to Schwerin.

The parties have cited, and we have uncovered, relatively few California appellate decisions that discuss the trust principles sometimes referred to as the "merger doctrine." One of the more recent decisions summarized the doctrine as follows:  "[W]hen the sole trustee of a trust and the sole beneficiary of the trust become one and the same person, the duties of the person, in his or her role as trustee, and the interests of the person, in his or her role as beneficiary, 'merge,' meaning that the trust terminates as a matter of law, and the trust's assets irrevocably vest in the beneficiary.  [Citation.]  The determination

4

whether the duties of a trustee and the interests of a beneficiary have become united in a single person is a question of law resolved by construction of the trust instrument. [Citation.]" (*Weinberger v. Morris* (2010) 188 Cal.App.4th 1016, 1021; see 13 Witkin, Summary of Cal. Law (10th ed. 2005) Trusts, § 213, p. 795; Rest.3d Trusts (2003) , § 69, pp. 535-537.)

The merger doctrine does not apply here because Bradenberg was never sole trustee.[2] The Trust designated a second (special) trustee who was to act in concert with Bradenberg on spending beyond necessities. The Trust did give Bradenberg power to invade Trust principal, but not unlimited power. Further, rather than irrevocably vesting the assets in Bradenberg, the Trust provided for the possibility of assets passing to Bradenberg's children or Friedman's niece and nephew.

Schwerin nevertheless insists the merger doctrine applies despite the existence of the special trustee because "it is evident that [Kuhns] had no role as a genuine trustee following the Settlor's death." He points to Trust provisions purportedly giving Bradenberg unrestricted discretion to use Trust property without being challenged by any interested party.

Schwerin first cites the Trust provision that gave Bradenberg discretion to tap Trust assets for health, education, support, and maintenance. Using that as his starting point, Schwerin next cites a provision allowing the trustee to terminate the Trust if the assets were depleted. He then suggests Bradenberg could cause de facto revocation of the Trust through waste and use of Trust assets under the provision allowing her to spend trust principal. He also notes the trustee's broad powers to manage the Trust assets.

---

[2] Respondents assert Bradenberg was also not the sole beneficiary of the Trust given the Trust provisions benefitting Inoue and Hyoto. Schwerin, however, appears to have the better argument on this point because Inoue and Hyoto were only contingent beneficiaries. (Compare *Ammco Ornamental Iron, Inc. v. Wing* (1994) 26 Cal.App.4th 409, 418 (*Ammco*) [merger principles do not apply when there are additional *vested* beneficiaries].) But given our conclusion that Bradenberg was not the sole trustee, we need not reach the beneficiary issue.

Finally, he points to a Trust provision absolving trustees of liability for their acts or omissions.

Schwerin would have us disregard the restriction on Bradenberg's spending for comfort, welfare and happiness.[3] Read as a whole, however, the Trust reveals Friedman's intent to provide for Bradenberg's necessities. Spending for items beyond necessities was left to the discretion of Kuhns.

Schwerin's argument also presupposes that trustees with the power to invade principal can act with impunity. Obviously the law does not allow that. (See e.g., Prob. Code, § 16081 [trustee with absolute power shall not act in bad faith or disregard purposes of the trust].) Nor did the Trust itself. The Trust forgave a trustee's ordinary negligence, but it did not absolve a trustee from liability for willful misconduct or gross negligence. As the appellate court in *Ammco*, *supra,* 26 Cal.App.4th at page 419 explained in rejecting a similar merger doctrine argument, a trustee who is also a beneficiary and who is given discretion to invade trust principal has a fiduciary obligation to the remaindermen to confine his or her demands within reasonable limits.

Schwerin also believes the facts confirm his interpretation of the Trust as bestowing unfettered discretion on Bradenberg acting as trustee. Here Schwerin confuses his legal argument with his factual arguments. That Bradenberg may have failed to observe the terms of the Trust in dealing with Trust assets raises a different question. (See *In re Gillespie* (Bankr. E.D. Ark. 2001) 269 B.R. 383, 388 [fact that debtor apparently did not comply with terms of trust or may have entered into transactions

---

[3] Paragraph 6.1(c) of the Trust provides: "Additional Discretionary Payments of Principal. At any time or times during the trust term, the special trustee described in paragraph 7.19, shall pay to or apply for the benefit of CLAIRE as much of the principal of the trust as the special trustee deems proper for CLAIRE's comfort, welfare, and happiness (but subject to subdivision (c) of California Probate Code Section 16081 if CLAIRE is the special trustee). In exercising discretion, the special trustee shall give the consideration that the special trustee deems proper to all other income and resources that are known to the special trustee and that are readily available to CLAIRE for use for these purposes. All decision of the special trustee regarding payments under this provision, if any, are with the special trustee's discretion and shall be final and incontestable by anyone."

6

beyond her capacity and authority does not alter the written provisions of trust or their legal effect].) We therefore turn to Schwerin's argument that Bradenberg's actions made the assets available to satisfy her debts.

*C. Schwerin's Alter Ego Theory*

Schwerin contends the same result—termination of the Trust—can be reached as a matter of fact based on Bradenberg's failure to observe any trust formalities. He points to the evidence showing Bradenberg held herself out as the owner of Trust assets and Kuhn's lack of supervision in his role as special trustee. Schwerin argues the Trust became Bradenberg's alter ego.

Respondents dispute neither Schwerin's statement of the law (that alter ego principles can apply to reach trust assets) nor his evidence. Instead, in two brief paragraphs of argument, they assert the alter ego doctrine does not apply here because the Trust assets were "intact" after Bradenberg's death. Respondents fail to explain how this single fact resolves all questions concerning Bradenberg's handling of Trust assets, such that respondents are entitled to summary judgment.

The alter ego doctrine typically applies to pierce " 'the corporate veil.' " (See *Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300.) The doctrine has two general requirements: (1) there is such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) an inequitable result will follow if the acts of the corporation are treated as those of the corporation alone. (*Ibid.*)

The alter ego doctrine can also apply in the trust context. (*Wood v. Elling Corp.* (1977) 20 Cal.3d 353, 365.) In the case of a trust, the question is whether the trustee lacks independence and simply carries out the bidding of the equitable owner of the trust property. (*Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 521-522; see *In re Schwarzkopf* (9th Cir. 2010) 626 F.3d 1032, 1037-1040 [alter ego doctrine applied where equitable owner dominated and controlled all decisions of the trust]; see also *Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1319 [trust beneficiaries hold equitable estate and are regarded as real owners of trust property under general principles of trust

7

law].)  The trust itself cannot be a person's alter ego because a trust is not a separate legal entity.  (*Greenspan v. LADT LLC, supra,* 191 Cal.App.4th at pp. 521-522.)  Instead, the alter ego doctrine provides " 'a viable legal theory for creditors vis-a-vis trustees.' "  (*Id.* at p. 522.)

It appears the alter ego scenario in the Trust context commonly involves a settlor transferring assets to a trust to shield them from creditors, while still maintaining control over the assets.  (See e.g., *In re Gillespie, supra,* 269 B.R. 383, 388-389.)  In such a case, the trust is a sham from the outset.  Here Schwerin does not claim the Trust was a sham when it was created.  It was only after the settlor's death that observance of trust formalities allegedly ceased.  If Schwerin can prove the requisite unity of interest (legal and equitable ownership), the alter ego doctrine should provide a viable legal theory for Bradenberg's creditors.

Among the factors suggesting an alter ego relationship are commingling of assets and funds, and disregard of legal formalities.  (*Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1073.)  Schwerin produced evidence showing both factors were present.  That evidence takes on a particular significance because the equitable owner of the Trust assets was one of the trustees.  In fact the evidence suggested Bradenberg was effectively the alter ego of herself.  She dealt with Trust assets as she pleased with no supervision.

There is a triable issue of fact as to whether Bradenberg was the real owner of the Trust assets under the theory of alter ego.  (See *In re Schwarzkopf, supra,* 626 F.3d at p. 1040 [failure to find alter ego liability would sanction a fraud or promote injustice].)[4]

## DISPOSITION

The judgment is reversed.  Schwerin shall recover his costs on appeal.

---

[4] Schwerin also argues he can reach Trust assets because the automobile Bradenberg was driving when she struck him was a Trust asset.  Schwerin may attempt to prove the automobile was a Trust asset on remand. We express no opinion, however, on the legal effect of proving that fact.  We also express no opinion on Schwerin's argument that the transfer of Trust assets to Inoue and Hyoto was fraudulent (Civ. Code, §§ 3439.04, 3439.05) because Schwerin must first prove he is entitled to reach Trust assets to satisfy his judgment against Bradenberg.

_____
REARDON, ACTING P. J.

We concur:


_____
RIVERA, J.


_____
HUMES, J.